WESTERN COAL & MINING COMPANY *v.* DOUGLASS.

Opinion delivered October 8, 1906.

CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—Where , the evidence tended to show that a miner; in entering a place of danger, where

he was killed, either did not know of the source of danger at all, or else believed that his immediate superior was in the place, and consequently that it would be safe for him to enter, the question whether he was guilty of contributory negligence was properly submitted to the jury.

Appeal from Sebastian Circuit Court, Greenwood District; *Styles T. Rowe,* Judge; affirmed.

*Ira D. Oglesby,* for appellant.

*John S. Little* and *T. B. Pryor,* for appellee.

HILL, C. J.   John Williams, an old and experienced miner, was killed by a gas explosion in a mine of appellant company, where he was at work, and his administrator has recovered a judgment for $1,500 against the company, which has appealed therefrom.   Appellant pretermits all other questions, and rests upon the contention that there was no evidence to sustain a submission of the case to the jury, and consequently the judgment can not stand.

McGraw, the boss driver, and Williams, two miners, were sent by the pit boss into the Fifth East Entry to lay a switch. McGraw drove them and the material for the work to the place. There was a door leading into this entry whose purpose was to prevent the air passing therein, thereby forcing it to continue along its course which would carry it through the Fifth Entry, relieving it of accumulated gas, and giving proper ventilation. If this door was left open, the air went through it and short-circuited to the return course, thereby leaving this entry without ventilation.   This, as all other ventilating doors, was constructed so that it would close itself whenever it was opened.   Concussions in the mine from shots, especially windy shots, explosions and probably other causes would open the door, but it should be so hung that it would immediately slam shut.   The appellee's evidence shows that this door had become defective.   When opened, it would not always slam back, as it should, and this condition had existed for some time, and had been reported to the pit boss, who promised the fire boss that it would be remedied.   McGraw, Bussey and Williams only stayed in the entry a short time, and went elsewhere to work, and returned to the entry about two and one half hours after they left it, and found the door open, and

went in only a short distance when the gas ignited from their open lamps, and from the explosion Williams was so injured he died after lingering through great suffering.

Appellant contends that it was the duty of Williams and his companions to close the door when they left the entry, and that the evidence shows they failed to do it, and that, irrespective of this fact, it was negligence to enter the entry when they found the door thereto open.

McGraw says that they failed to hear the door slam when they left the entry, and Williams went back to shut the door as he supposed, but he did not know whether Williams did shut it or not. There was much testimony that it was the duty of miners to listen for a door to slam shut after they passed through, and to go back and close it if they failed to hear it. This, however, is not material, as there is evidence from which the jury might well have decided that Williams did close the door. This is the inference to be drawn from the testimony of McGraw, and in addition to that three witnesses, each an experienced miner, testify that, if the door had been open for two and one half hours, the accumulation of gas in that time would have caused a most disastrous explosion, blowing out the door and destroying that part of the mine; while the evidence shows that this explosion did not even have force enough to blow out the door, and did no damage other than burning the men who were in it. This testimony fully justified a finding that Williams, or his companions, closed the door when they left. There is no evidence of how it was opened. The evidence shows that the door on the Fourth West Entry, a door similar to this one and on the same air course, was opened and shut just before the return of these men to the Fifth East Entry. McGraw gives his opinion, from seventeen years' experience in mines, that this would create sufficient concussion of air to open the door to the East Fifth. If the door was properly swung, it would immediately swing back; if not, it would stay open. Martin, Rafter the State Mine Inspector, testified that in his opinion the opening and slamming of the door on the West Fourth Entry could not cause the door of the Fifth East to open. The jury passed on this conflict, and had a right to accept McGraw's theory in preference to Rafter's. But it was hardly incumbent upon appellee to account for the opening

of the door. It was sufficient for this case to clear himself and fellow-servants of fault in the matter, for it was the master's duty to provide a working place free of gas.

It is earnestly insisted that the entrance to this entry by Williams and his companions with the door open was negligence of itself, and in doing this dangerous act they assumed the risk of the danger encountered.

McGraw, who was appellee's witness, says that Williams was riding in the car, which was drawn by a mule, in returning to this entry, and Bussey stopped the car, and went forward to open the door, and found it open, and drove on in; and from where Williams was he could not see that the door was open. On the other hand, appellant introduces evidence of statements of Williams tending to show he knew the door was open before he went in; that he and McGraw talked of it, and that he did not blame any one but himself for the injury. But these statements also show that he and McGraw talked of the reason the door was open, and that McGraw said Pudlass, the fire boss, was in there, and he asked McGraw if he was sure, and McGraw said he would swear it.

McGraw, as driver, had been in other parts of the mine while Williams was at work in the Fourth West Entry, and had met and talked to Pudlass, the fire boss, and Jones, the pit boss, in the interval. If the fire boss had gone in the entry and left the door open while there, the inference would be that it was for only a few minutes. It would tend to show that there was no immediate danger in the entry when the man whose duty it was to see to the ventilation was then in there. It must be remembered that only a few hours before Williams was in there and found it safe and properly ventilated. Take either view of the case, and it presented a question of fact whether it was negligence on part of Williams, under the circumstances shown, to return to this entry. The court properly submitted this question to the jury, and its finding was sustained by the evidence.

Judgment affirmed.